PAUL W. NEWTON v. ROBERT J. WHITAKER AND WIFE, ELLEN RUTH WHIT-
AKER; WILFRED S. TEMPLETON; GENERAL MOTORS ACCEPTANCE
CORPORATION; AND GENERAL MOTORS CORPORATION

No. 8623SC78

(Filed 21 October 1986)

**Conspiracy § 2— conspiracy to force plaintiff out of automobile business—sufficiency of complaint**
    Plaintiff's complaint was sufficient to state a claim for relief where he alleged that the several defendants conspired to force him out of an automobile dealership, which he operated and partially owned, by terminating the credit arrangements under which the dealership did business.

    Judge MARTIN dissenting.

APPEAL by plaintiff from *Morgan, Judge.* Order and judgment entered 21 November 1985 in Superior Court, WILKES County. Heard in the Court of Appeals 4 June 1986.

Plaintiff's appeal is from an order and judgment dismissing his complaint as to the defendants General Motors Acceptance Corporation and General Motors Corporation for failing to state an enforceable claim against them.

The claim arose out of the following setting: Before June 1982 plaintiff owned 51% of the stock of Empire Oldsmobile-Cadillac, Inc., an authorized GM dealership in Wilkes County, and managed the business; the defendants Whitaker owned the re-

Newton v. Whitaker

maining 49% stock interest and furnished financial support to the dealership but did not otherwise participate in its operation or management; the dealership purchased new cars from General Motors under a floor plan arrangement and it purchased parts from General Motors on an open credit account; both the floor plan and credit account were personally guaranteed by the Whitakers.

The claim is stated in the complaint substantially as follows: In June of 1982 the Whitakers advised plaintiff they were not going to put any more money into the dealership; advised an officer of GMAC that they were cancelling their guarantee of the floor plan arrangement; and advised Gary Sigmon, the zone manager of the Oldsmobile division of General Motors, that GMAC was repossessing all of the dealership's automobiles, new and used. Immediately thereafter, Sigmon placed the dealership on a C.O.D. basis for both parts and new cars. Near the first of August 1982 defendants Whitaker also told plaintiff that they were going to sell their dealership stock and would accept a certain price for it, but when plaintiff obtained someone willing and able to pay the price stated they sold the stock to defendant Templeton for less. All the defendants knew plaintiff could not finance the dealership's operation and would have to sell his majority stock interest, and the various acts done by the several defendants were accomplished pursuant to a conspiracy between them to freeze him out of the dealership, which they did to his damage in the amount of at least a million dollars. The acts were also deceptive and unfair in violation of Chapter 75 of the North Carolina General Statutes.

*Hall and Brooks, by John E. Hall, for plaintiff appellant.*

*Petree, Stockton & Robinson, by Jackson N. Steele, for defendant appellees General Motors Corporation and General Motors Acceptance Corporation.*

PHILLIPS, Judge.

The gist of plaintiff's claim is that the several defendants conspired to force him out of the automobile dealership, which he operated and partially owned, by terminating the credit arrangements under which the dealership did business. The sole question presented by plaintiff's appeal is whether the complaint sufficient-

ly states a claim of civil liability for conspiracy, a recoverable tort under our law. If it does the unfair and deceptive business practice claim, also asserted in the complaint, can rest thereon, at least at this stage of the case; but if it does not both claims necessarily fail, since the unfair or deceptive business practice claim has no other basis. In this state a civil claim for conspiracy is governed by the following legal principles:

> A conspiracy is generally defined to be "an agreement between two or more individuals to do an unlawful act or to do a lawful act in an unlawful way." *Holt v. Holt*, 232 N.C. 497, 61 S.E. 2d 448 (1950). (Other citations omitted.)

> In the *Holt case, supra,* in opinion by *Ervin, J.,* this Court held that "to create civil liability for conspiracy, a wrongful act resulting in injury to another must be done by one or more of the conspirators pursuant to the common scheme and in furtherance of the common object. The gravamen of the action is the resultant injury, and not the conspiracy itself."

*Muse v. Morrison*, 234 N.C. 195, 198, 66 S.E. 2d 783, 784-85 (1951).

The defendant appellees contend and the judge below apparently held that no recoverable conspiracy has been alleged because the defendants Whitaker had a right to stop guaranteeing the dealership's credit and GMAC had a right to stop financing its purchase of new cars and General Motors Corporation had a right to stop selling cars and parts to the dealership on credit. But the complaint, all that we have to go by at this stage, does not so state; and liberally construed, as the spirit of our rules requires, *Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E. 2d 494 (1974), it cannot be interpreted to so imply. Nor is the complaint fatally deficient because it does not expressly state that the acts which allegedly damaged plaintiff were *wrongful.* Under our modern practice only claims for fraud, duress, libel and slander have to be pleaded with any particularity at all. Rule 9, N.C. Rules of Civil Procedure. In all other instances the complaint is sufficient if it gives "the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief, . . ." Rule 8, N.C. Rules of Civil Procedure. Plaintiff's complaint provides that notice, in our opinion. It lists the acts that allegedly forced him

Newton v. Whitaker

out of the business and alleges that those acts were done pursuant to a conspiracy; which in effect is an allegation that the acts were wrongful, since a conspiracy imparts wrongful conduct. Thus, defendants have been notified of both the factual and legal basis for the claim—all that they need to know in order to answer the complaint and test its allegations through discovery. Further allegations are not required. The unlikelihood of plaintiff being able to prove that the acts which allegedly injured him were wrongful is irrelevant at this juncture; as a complaint is dismissable for want of proof under Rule 12(b)(6), N.C. Rules of Civil Procedure, only when it appears that the proof needed is beyond the realm of possibility. *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970). And such does not appear in this instance.

Vacated and remanded.

Judge PARKER concurs.

Judge MARTIN dissents.

Judge MARTIN dissenting.

Notwithstanding the liberal construction accorded pleadings by our Rules of Civil Procedure, the allegations of a complaint must be sufficient to state, at least, the substantive elements of some legally recognized claim. *Stanback v. Stanback*, 297 N.C. 181, 254 S.E. 2d 611 (1979); *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970). Otherwise, it is subject to dismissal pursuant to G.S. 1A-1, Rule 12(b)(6). *Id.* "For the purpose of the motion, the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of facts are not admitted." *Sutton, supra*, at 98, 176 S.E. 2d at 163. In other words, the sufficiency of the complaint must be judged by the facts alleged, rather than by the conclusions of the pleader.

The substantive elements necessary to support a civil claim for damages caused by a conspiracy consist of (1) an agreement between two or more persons, (2) to commit an unlawful act or to accomplish a lawful purpose in an unlawful manner, and (3) the commission, pursuant to the scheme and in furtherance of its objective, of some act or acts resulting in damage to the plaintiff. *Evans v. GMC Sales*, 268 N.C. 544, 151 S.E. 2d 69 (1966). The com-

plaint in the present action is deficient in two respects. First, there is no factual allegation that General Motors Corporation (GM) or General Motors Acceptance Corporation (GMAC), or anyone acting on behalf of either of them, entered into any agreement or combination among themselves or with the other defendants to take any action with respect to Empire Oldsmobile-Cadillac, Inc. or plaintiff. Nor may such an agreement be reasonably inferred from the facts alleged. According to the allegations of the complaint, all of the acts taken by GM and by GMAC were taken in response to information provided them by defendants Whitaker concerning the financial instability of the dealership, rather than by reason of any agreement to take any action to accomplish some wrongful purpose. Thus, the primary allegation upon which the majority bases its opinion, that of "conspiracy," is in reality nothing more than a conclusion or deduction which is not warranted from the facts which plaintiff has alleged.

Second, even if the complaint was sufficient to allege an agreement, no facts alleged in the complaint would indicate that the acts which GM and GMAC are alleged to have taken, i.e., the cancellation of credit to Empire, or the means by which those acts were accomplished, were unlawful. "An agreement to do a lawful act cannot constitute a conspiracy regardless of the motives of the parties. . . ." *Evans, supra* at 546, 151 S.E. 2d at 71.

Since, in my view, the complaint is insufficient to allege the substantive elements of a claim against either GM or GMAC for damages resulting from a conspiracy, I vote to affirm the trial court's dismissal of plaintiff's claim against both GM and GMAC.